Would Council get ready in 23-6048, Rhoades v. Stitt? We're going to need to wait a minute until the courtroom clears and the door is closed. Thank you, Your Honor. There's still some people coming in, so. Would you close the door, please? Maybe it closed by itself? Good. Okay. Mr. Duncan? Good morning, Your Honors, and may it please the Court. My name is Alex Duncan. I'm here on behalf of Judge Kevin Stitt, Chip Keating, and Jason Nelson. We're here today to ask you to reverse the District Court's summary judgment order denying qualified immunity. That decision should be reversed for two reasons. First, Mr. Harrell waived his due process rights when he voluntarily retired from DPS. And second, Mr. Harrell's right to due process wasn't clearly established at the time. Now, I'll talk about the retirement issue first. I think three facts overlooked by the District Court helped crystallize this issue. The first is that Mr. Harrell, who was the leader of the Highway Patrol and was a 20-year veteran in law enforcement, was in serious trouble when he got the call from Mr. Nelson. He had helped a trooper cheat on a promotional exam by giving him test questions in advance of the exam. And when he got caught and was about to be exposed by another trooper, a whistleblower, he helped with his co-workers try to get that whistleblower indicted on criminal blackmail charges. And all of that was exposed and publicized in a public lawsuit filed by the whistleblower against Mr. Harrell two weeks before he elected to retire. But he hasn't conceded that factual background, has he? He hasn't admitted his. So if waiver is going to be based on those facts, we need some further factual development and fact-finding, don't we? Well, I would disagree. I'm not saying there's not a waiver for other reasons, but to the extent you're saying, well, he knew he was going to be exposed for misconduct, that's not—how skewed is it? Well, Your Honor, I think two points. One, he doesn't dispute really the cheating. I mean, the record is clear. It's the fact number two in our summary judgment brief that's admitted. He gave the test questions to the trooper. He only gave— That's admitted. Well, he admitted—I mean, he admits that he gave that information to that trooper, and he only gave that assistance to that one trooper and nobody else. Now, he will dispute, I think, the characterization of that conduct. He will say, that wasn't cheating. That was—I think his words are mentoring. I think we all recognize that if you do that, that's called cheating. Now, certainly he disputes his involvement in the efforts to silence the whistleblower, but I think that's not a material fact dispute because what matters, if you look at the cases, is that the employer had good cause, and what good cause means, and I think it's discussed in the Christie case that's cited in our briefs, it means a rational basis for discharge, and I think what happened here was once the lawsuit got filed and Secretary Keating and Mr. Nelson look at it, they follow up, and then what they hear from two state prosecutors, the District Attorney for Oklahoma County, David Prater, and then they hear from the Attorney General Mike Hunter, and both of those men corroborate this information. So, I mean, I think to your question, Your Honor, the bottom line is Mr. Harrell knew he had cheated, but he also knew that he was going to have to answer for these allegations. He can dispute whether or not he would ultimately prevail in it, but I don't think that that's a material question. Now, the second fact overlooked by the District Court is that Mr. Harrell, when he retired, he did so, and I quote, knowing full well I had the statutory ability to go back. So, in other words, Mr. Harrell knew that in addition to the three options he was presented, he had a fourth option, and that was to go back to Maine, and he waived that option. And so, that's a significant point, and it's a point that the District Court disregarded, was his knowing waiver of that right. Now, you know, the statute upon which Mr. Harrell relies, which is 47 OS 2-105, it does— Can I interrupt you there? Can it be a knowing waiver of the right when it was never offered as an option to him? He was offered the option to be terminated, to resign, or to retire. He wasn't offered the option to return to his most recent position. He said, I was aware I could do that, but is that a waiver when he wasn't given the option? I think so, Your Honor. First, the statute doesn't say that the government has to tell Mr. Harrell that that's an option that he has. And the good news is he knew he had that option. But I think, more to the point, the only position that was on the table in the phone call with Mr. Nelson was his position as chief, and what's clear is he did not have a property interest in chief that was an unclassified at-will position, and so that's what was being discussed. Now, Mr. Harrell chose the one option of the three, retirement, that actually precluded his ability to go back and exercise his rights to go back to major. Now, I mean, look, he could have said, you know what? Fire me. Or I resign. I quit. I don't want to be chief anymore. And he could still have preserved his ability to say, now give me my old job back. And he did not do that. And that's something that the district court disregarded. The other issue that the district court disregards is this evidence of Mr. Harrell's serious misconduct, or at least the allegations against him. Instead of engaging with that record evidence, the district court makes a finding, and it says the record's devoid of any evidence as to why the governor gave Mr. Harrell the options that he did. And that's just not right. We know Secretary Keating, what he learned in August of 2019 about Mr. Harrell, and that he communicated that up the chain ultimately to the governor, who relying upon it lost confidence in Mr. Harrell. And that omission is significant, not so much because it's the information, the evidence, the allegations, that shed light on the governor's decision-making, but more so that it sheds light on Mr. Harrell's decision-making and why he chose to retire, because he knew that he was in trouble. Now, in terms of the legal errors that the district court weakens and made here, there are two significant ones. And the first is in misapplying the Parker factors. So the district court spent a considerable amount of its focus on the differences between termination versus termination proceedings. And I think there are three points to make to this. The first is that Parker and related cases, they say that even if the hard choice is resign or face outright termination, that is not a per se involuntary choice. And we've seen cases like that, for example, Lentz versus Dewey, where the employee was given basically the option you can resign and take a stock buyout or you'll be fired. And the other point is, too, that it's almost besides the point whether he was offered termination proceedings, because, again, he wasn't entitled to any sort of process in the chief position, which is the position he occupied. He could have been summarily terminated from that position, and there would have been no due process problem. I feel like you're confusing the constructive discharge issue, which is generally a fact issue outside the whole due process construct, with what process he was due or whether he had a property interest. I read the district court to just sort of separate out the whole constructive discharge issue and decide that based on the Parker factors. You see what I'm saying? When you get to the question of did he have a property interest, the district court made two findings. He said he didn't have one in his current position, but he had a continued interest in employment in his prior position. Yes, Your Honor. Do you disagree with that? No, we agree. We agree that he did not have a property interest in the position that he had at the time chief, but that he did have a property interest in the position of major, and the point is, I think. Okay, so he was entitled to due process then, assuming he was not constructively discharged. I think he was entitled to due process if he had then exercised the right to go back and said, I want to go back. No, that's not the way it works. If you've got a property interest in your continued employment, you've got a right to due process. I understand your question, Your Honor. So if you're agreeing that he had a property interest in his continued employment, regardless of whether he took it or didn't or offered it or not taken it, if he had that property interest, if you agree with that, then he was entitled, assuming he did not voluntarily resign, he was entitled to due process, procedural due process. I understand Your Honor's question. I think the point that I would make is, and this is something that honestly I've struggled with in this case, is that I think it's a two-step process. He occupied the position of chief. That was the only position he had. And then he can be removed from that position, and then he can say, I want to go back. And then if the governor had said, no, or we're going to give you your process, I mean, that's a secondary question, and we never got there. The facts of what he actually did don't figure into the property interest analysis, which is under state law. I would agree with that, Your Honor. Which is, and then this is how the district court interpreted it, that he had a continued interest in employment because he could have, under state law, taken his old job back. He could have, and he didn't. But that doesn't factor into whether he had a property interest. No, I agree. Now, okay, so let's assume for the moment that he didn't voluntarily retire, that he was constructively discharged, that he had a property interest in his employment. I'm struggling a little bit with your due process, with your analysis of due process and the violation. If he had a due process, if he had a right, he had a right to a hearing and an opportunity, notice of an opportunity to be heard, which he didn't get here. There's no question he did not get due process here, is there? There's no question, but I think the- So why are we even talking about whether it's clearly established or not? I mean, it's clearly established under Loudermill he's entitled to notice and an opportunity to be heard. He did not have that. I think there are two points. The first is that we didn't even get to the due process part of this because he chose to retire from a position in which he had no property interest. And the second point, I think why, whether or not the right is clearly established is sort of the second point of the- Oh, that's not- Okay. I get confused reading your briefs, and I feel like we're mixing these things all up, and you're talking about state law when you should be talking about federal law, which controls the clearly established prong. Well, Your Honor, and I'll admit, and I think this kind of dovetails into why this case is suitable for qualified immunities, because the legal questions are a little bit vexing. How would you phrase the clearly established question in this case? The clearly established question boils down to this argument, and the gist is there's a conflict. The conflict is between the statute that he relied upon, which is this 2-105, which says what it says, and then there's this line of cases from the state's highest court going back to Bynum v. Strain that say, under certain circumstances, the governor can remove executive branch officials, and that decision is not subject to judicial review. Now- That's state law. It doesn't control the clearly established inquiry. Federal law controls. State law controls whether he has a property interest. And I guess I would say that, yes, Your Honor, that he didn't have a property interest. It wasn't clearly established that he had a property interest at the time that the irrelevant events occurred, and if it's not clearly established he had a property interest, then it's not clearly established he had a right to due process, and that, I think, is the argument. And so this court has said that, you know, ordinarily you need a non-tenant Supreme Court decision or a Tenth Circuit decision that clearly defines, you know, what the law is, and we don't have that here. Now, certainly this court can be skeptical of the governor's position, and the district court was, and can write an opinion that clearly defines the governor's authority going forward, but the whole way that qualified immunity is supposed to work is that in this case, in this instance, that decision did not exist, and so the appellants ought to be entitled to qualified immunity. So just so I understand, you're saying that what's not clearly established is that he had a property interest under Oklahoma law? Yes, Your Honor. Okay. Yes, Your Honor. And I'll reserve the balance of my time if that's all right. Good morning, Your Honors. May it please the Court? My name is Dustin Hobson, and I'm here presenting today in representation of Michael Harrell, the former chief of the Oklahoma Highway Patrol. This case arises from a circumstance in which the governor of Oklahoma seeks to have extensive power beyond the limitations impressed upon him in express terms by the legislature as set forth in the statutes of the state of Oklahoma, specifically the statutes as they relate to the Oklahoma Department of Public Safety. We're here today on a qualified immunity review, as the Court has already inquired about, and under such a review, we have the burden to show that a public official violated the plaintiff's constitutional or statutory rights and that these rights were clearly established at the time of the alleged violation. This Court and the Supreme Court of the United States have been clear that even in novel circumstances where there's not a case directly on point, clearly established law may be ascertained. We assert that the way to ascertain that is by a clean and clear reading of 47 Oklahoma statutes, Title 47 of the Oklahoma Statutes, Section 2-105. Counsel referenced that statute, and the district court absolutely acknowledged the express language of that statute, recognizing that the chief of the highway patrol has a special and unique position within the Oklahoma government scheme. Specifically, the state of Oklahoma has established a rubric in which the commissioner is a governor-appointed position. The commissioner of the Department of Public Safety is a governor-appointed position. But there was no commissioner at this time, right? The commissioner was terminated the exact same day, the exact same time. There absolutely was a commissioner prior to that. In the absence, why couldn't the governor, as chief officer, direct his subordinates in this way? Because the statute is expressed and says only the commissioner can appoint that position. There is no provision. So what does it mean to be the chief officer of the department?  No, the governor as chief officer. Well, it means that as an executive, as the chief executive, he does have oversight over the executive agencies within the government. However, whether he has the ability to hire or terminate this particular position or not, as Judge Moritz questioned and pointed out, the specific issue here is the right to return. Whether Chief Harrell was subject to discipline or anything by the governor or by the commissioner, as would be appropriate, the right to return does not, in the statute, have any contingency upon good behavior, bad behavior, calls for termination and whatnot. Moreover, as the panel has already raised, we adamantly dispute that there was no question of fact as to this cheating scandal. The other plaintiffs involved whose cases were dismissed, as well as Mr. Harrell, were engaged in an active investigation of the other individual that counsel referred to as the whistleblower. The reason that is important and the whole idea of the cheating scandal and disciplinary reason, as the district points out in its opinion, is when providing discovery responses and certifying discovery responses, the governor himself indicated in his interrogatory answers on the record and as part of the record that we're looking at today, he indicated he did not have a strong recollection as to why he terminated these individuals, but he felt that he had some uncertainty with the leadership due to implementation of the REAL ID program in the state of Oklahoma. The problem with that is it is undisputed that Chief Harrell had no involvement in the REAL ID program whatsoever. Let me ask you about the statutory provision allowing him to go back to be a major. Certainly. How does that work? He could just say, okay, I'm out of here, I want to be a major. What happens to the allegations of misconduct during his tenure as chief? Do those disappear? Does he have an absolute right so that that conduct is irrelevant to whether he can retain the position as major? We submit that he does have an absolute right to return. Now, whether the commissioner in place at the time wanted to remove him from the chief of highway patrol and then put him on administrative leave, subject him to notice of due process and a hearing to be heard for the right of return, then in theory that can be done. But what we have in this situation is a situation where the credential access for Mr. Harrell was removed before the options. I'm interested in what you have to say, but I want to understand precisely your position with respect to what his right was with respect to becoming a major. The statute provides for that. That's an absolute right. It doesn't depend on whether he is engaged in any misconduct as chief. Is that correct? That is correct, Your Honor. Then once he becomes a major, is all that history wiped clean or could that information about misconduct affect his tenure as major? It could affect his tenure as major if the commissioner chose to raise it as an ongoing investigation. Okay, and then that would be a new process. Potentially so. Okay, so where I am very confused in this case is what process he was denied because what sort of hearing are you talking about? We talked about due process. Procedural due process is notice and hearing. Notice was he wasn't told he would become a major, but he knew that. I think the cases say if you knew something, the failure to give notice of it is not a denial due process. So what sort of procedure then, if he has an absolute right to become a major, what sort of hearing are you going to have? There's no fact finding to be done. It's just a legal argument. This is how the statute, if the governor or the state wants to contest the meaning of the statute, there might be a legal argument there. We don't talk about that as a due process, as a procedural due process issue, maybe a substantive due process issue. So if you raise a procedural due process claim, I think you need to say this is the process I was due, and I don't see what was denied him that he was entitled to in terms of procedural due process. Please enlighten me. Sure, Your Honor. Your Honor, we assert that it's the classic due process requirements as you indicated. A notice of some hearing and an opportunity to respond to a fair judgment. But those hearings are necessary. You're entitled to a hearing when there's a factual dispute that needs to be resolved. There's no factual dispute that needs to be resolved with respect to his remaining as chief because whatever the facts, the governor can get rid of them. And there's no factual dispute with respect to his being able to become a major because he's entitled to that. Absolutely. So what sort of hearing are you talking about? Can I interrupt? Yeah, please. I think you're confusing the property interest issue with the due process issue. The district court found, and I think this is what you're suggesting, he had a right to continued employment, which is what gives him the right to due process, the right to notice and an opportunity to be heard. The fact is, if he was terminated, if he was constructively discharged, and that's a question we have to resolve, and he had a property interest, which this statute presumably gives him, and he was terminated, then he had a right to notice and an opportunity to be heard if he was terminated. That's what I'm questioning. But notice and opportunity to be heard, he did not have, is what I think you're saying. That's correct, Your Honor. But what I don't understand is what sort of hearing are you going to have? If he has an absolute right to something, what sort of hearing is he entitled to? We're talking about a substantive right that doesn't depend on any facts. He was terminated, so his hearing would be over the termination.  He didn't have that job. Tell me what would happen at the hearing to determine whether he could become a major. Well, Your Honor, your question is premised upon the idea that we don't have any disputed facts. We absolutely do have. What are the disputed facts with respect to whether he could become a major? The disputed facts are the governor chose not to make him, put him back as a, he was never given that opportunity. But he had it the whole time, right? I'm sorry to interrupt. He had the opportunity because it says completion of duties, right? The completion of duties is what triggers the right of return. Yes, it should. However, both the defendants did testify. Governor Smith refused to testify as the court acknowledged in his opinion. Both the defendants that did testify testified that there was no way, under any circumstance, Chief Harrell was ever going to return to the highway patrol. Therefore, he was not presented that opportunity. That was absolutely… How was he not presented that opportunity? He wasn't told about it. He knew about it. And so I can see why there would be a requirement of notice if he didn't know. But he knew about it. So the due process issue isn't lack of notice. It's lack of a hearing. And I don't understand what the hearing is about. Your Honor, thank you for your question, and I do understand it. When we review qualified immunity, we are limited. Based on the crew's decision, we are limited upon abstract questions of law. And when we look at the facts, we must look at the totality of circumstances. Now, counsel wants to talk about this immediate response when Defendant Nelson contacted Chief Harrell. He said, you have this option. Immediately on the spot, that second, Chief Harrell said, I'm going to retire. There's no opportunity for deliberation. He didn't take the opportunity to deliberate. After the fact, he said, certainly I was aware of that. However, when we reviewed the totality of the circumstances that the district court did review, the credentials were cut off prior to the options given. The options were termination, resign, or retire. He was not provided an opportunity or told that that would be a consideration. And, in fact, the defendant said he was never coming back to the Highway Patrol. Let me put the question a little differently. Maybe this will focus it. I'm sorry to frustrate my colleagues. Say he was told specifically one alternative would be to go become a major. And he's told that, and he said, I'd like to do that. Would there be any hearing on that? There would not be because they would have afforded him his property. Because there's an absolute right to that? Yes. Okay. So the error was not telling him he had that opportunity? The error noted that that was the error. The notice that was not provided, that was certainly. That was the denial of due process? Yes. And you're saying that was the denial of due process even though he knew he had that right? Well, again, Your Honor, while he said in his deposition two or three years later, I knew I was aware of it. That was not anything that was discussed at the time. It was on a Sunday before Labor Day. There was no opportunity like there was in the Parker case to deliberate, to speak with an attorney. What finding did the district court make about that? Aren't we bound to review that finding or to accept that finding? About which part, Your Honor? About what he knew at the time. I don't believe – I believe the district court acknowledged that it's in the record that he said in his deposition that he knew about it, that there was not a further explanation as to what his knowledge was on that date. And, again, there was a clear record that he didn't have an opportunity on a Sunday to speak with a lawyer. He didn't have an opportunity on a Sunday before Labor Day. He wouldn't even have time the very next day. Counsel talked about the Parker decision. The plaintiff and Parker had a number of days. I believe it was 10 days or so. And then prior to the time of the actual hearing, I believe there was a contingency of that hearing. And then also in that, the Parker plaintiff's acknowledged, I created an affidavit or an application that was false. I did not hire my daughter when she had credentials. She acknowledged this wrongdoing. And so we don't have that here. And that was expressed and clear in the record. And I believe the district court did acknowledge that those circumstances, when looked at in their totality, do not arise at the level of involuntary termination. I want to try this one more time. Okay. When you have, we're going to assume he was terminated here because that's in question, right, whether he was constructively discharged. Assuming he was, he was terminated, and he has a property interest, that's what gives him the right to due process. Due process, as we know, is determined by federal law, not by state law. And if he's terminated, which is what this is all about, we assume he's terminated, not that he should have been given another job or that he could have resigned. We assume he was terminated. And then we decide, was he given notice of the reasons he was terminated and was he given an opportunity to respond? For instance, by saying, you can't fire me. I'm entitled to take my old job back. He could have said that at a hearing. So the issue isn't, was he given his old job back or was he told he could? If we assume he was terminated, the issue is, was he given notice and an opportunity to respond? And he wasn't. That's correct, Your Honor. Right. So there was no due process if he had a property interest, which is a different question, which is based on state law. Do you see what I'm saying? I do. You're mixing it all up. I do, and I don't intend to mix it all up. Okay. We'll talk about it. The Alexander case is instructive as it involves a case where city rules deem even if there's a termination, a person has bumping rights to go and have their property interest heard and be provided with notice and opportunity for a hearing prior to any demand of that bump process. So that's where the federal law makes it clear to us that this situation certainly applies as well. And so I see my time has expired, and I would ask that the court, upon consideration, deny the appeal, uphold the district court's determination, and remain in this order for the process at the district court level. Thank you very much. I think there's a little time left. Be quick. I will, Your Honor. Two quick points. Counsel said that the record reflected there was no way that Mr. Harrell could have gone back to his previous position. Your Honor, you've seen the record, you've seen the testimony. That's not in the record. And the second point is Mr. Harrell, he chose the one option that actually shut the door on him going back and exercising his property interest, which would have been entitled him to some sort of due process. And so I just wanted to say it's been a very great privilege to argue to you today. Thank you very much. Thank you, counsel. Case submitted. Counselor excused.